UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 4:10-cr-31 |
| v. | ) | |
| | ) | Judge Mattice |
| KENNETH CLAY | ) | |

### MEMORANDUM AND ORDER

Before the Court are Defendant Kenneth Clay's Objections to Report and Recommendation [Court Doc. 26].

Defendant filed a Motion to Suppress [Court Doc. 11] which was referred to Magistrate Judge William B. Mitchell Carter. [Court Doc. 12.] Magistrate Judge Carter held an evidentiary hearing on Defendant's Motion to Suppress and issued his Report and Recommendation ("R&R") [Court Doc. 24] which recommended that Defendant's motion be denied. Defendant timely filed an objection to Magistrate Judge Carter's R&R and the Government responded [Court Docs. 26 & 27].

The Court has now reviewed the entire record pertinent to the instant objection, and for the reasons described below, the Court will **ACCEPT and ADOPT** Magistrate Judge Carter's R&R and will **DENY** Defendant's Motion to Suppress.

### I. STANDARD OF REVIEW

The Court must conduct a *de novo* review of those portions of the Report and Recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations 28 U.S.C. § 636(b)(1)(C).

## II. FACTS

Magistrate Judge Carter held an evidentiary hearing on Defendant's Motion to Suppress on November 10, 2010, during which Grundy County Sheriff Brent Myers and Sheriff's Deputy James Cox testified for the Government. Investigator Steve Turman testified for the Defendant. In his R&R, Magistrate Judge Carter recounted at some length the facts developed at the evidentiary hearing. (Court Doc. 24, R&R at 1-5). Defendant has not objected to the facts as outlined in Magistrate Judge Carter's R&R. Instead, the objections focus on the legal conclusions drawn from the facts. Accordingly, the Court **ADOPTS BY REFERENCE** the facts as set out in Magistrate Judge Carter's R&R. (*Id.*) The Court will refer to the facts only as necessary to analyze the issues raised on objection.

## III. ANALYSIS

Defendant objects to Magistrate Judge Carter's determination that Sheriff Myers was a credible witness based on various issues. First, Defendant argues that Sheriff Myers was not credible when he testified as to his subjective concerns about his and the deputy's safety upon approaching Defendant's residence. (Court Doc. 26, Def.'s Objs. at 1.) Defendant argues that in spite of this supposed concern, Sheriff Myers did not take any precautions before approaching the house because he simply knocked on the door and walked in, he did not indicate any concern about an alleged second individual seen running towards Defendant's house, he did not do a protective sweep, did not further investigate for other tracks in the dew, and there was no evidence indicating that there was another person had been or was in the home. (*Id.* at 2.) Defendant also argues that Sheriff Myers'

testimony regarding smoke coming from a garbage bag and Defendant's black hands and black face is not credible because this information was not mentioned in Sheriff Myers' request for a search warrant or affidavit in support of his request. (*Id.*) Finally, Defendant claims that based on pictures of the garbage bag, there are issues of credibility with respect to Sheriff Myers' testimony about items seen inside the bag and Magistrate Judge Carter's finding that Sheriff Myers did not tear open or manipulate the bag. (*Id.*)

Defendant further calls into question Sheriff Myers' conclusion that the location of the garbage bag was enough from which to assume that the items came from inside the home and that Defendant was cooking meth. (Def.'s Objs. at 3.) Defendant argues that there was no proof of ownership or possession that would reasonably lead to the conclusion that a bag located in the yard belonged to Defendant. (*Id.*) Defendant argues that without this tainted evidence, the rest of the information was not sufficient to establish probable cause to search his home. (*Id.*)

Sheriff Myers testified at the evidentiary hearing that after being advised by a neighbor that someone matching the Defendant's description and another individual were seen running away from the arson scene and towards Defendant's house, he and Deputy Cox found tracks in the dew leading in that direction. (Court Doc. 21, Transcript ("Tr.") at 7-9.) Sheriff Myers stated that even if they had not found the tracks, they would have gone to Defendant's home anyway because he was an arson suspect based on information obtained from the victim about an altercation with Defendant the previous day. (*Id.* at 9-10.) The arson victim had also advised law enforcement that Defendant was shooting a gun in his yard the previous day. (*Id.* at 6-7.)

When Sheriff Myers reached Defendant's property, he noticed a garbage bag sitting in a bathtub in Defendant's front yard and was able to see paraphernalia used to manufacture methamphetamine in the bag. (Tr. at 10.) Sheriff Myers testified that he did not have to manipulate the garbage bag to see the contents and that it was "laid open" in the bathtub. (*Id.* at 32-33.) Sheriff Myers and Deputy Cox also smelled hydrochloric gas, which is associated with the manufacture of methamphetamine. (*Id.* at 10-11.) Sheriff Myers looked through the window of Defendant's home, saw Defendant laying on the couch, and made the decision to enter. As to the issue of officer safety and Sheriff Myers' entrance into Defendant's home, Sheriff Myers testified as follows:

> Q: All right. From the front area of the house where you were, could you see into the house?
>
> A: Yes, sir.
>
> Q: And how were you able to see into the house?
>
> A: The window was right beside the door. And, actually, the door was cracked open. I knocked on it and there was no answer. I looked through the window and I saw the defendant lying on the couch. And the only thing that I could see at that time was that he was lying on the couch and that his clothing and hands were black.
>
> Q: Could you see anything through the door?
>
> A: No, sir.
>
> Q: All right. Did you make entry into the house at this point in time?
>
> A: Yes, sir.
>
> Q: For what purpose did you enter the house?
>
> A: Well, because number one purpose is those labs, those, what we call one pot meth labs, are very

>    dangerous and they could explode at any time. And
>    then the fact that the neighbors saw him with a gun
>    shooting in the yard, we were concerned about our
>    safety as well as the safety of the neighbors and the
>    people that were investigating the fire. And we just
>    didn't want anybody to get hurt at that time.
>
> Q: All right. You said that one pot is dangerous, did you
>    see a one pot inside of the house?
>
> A: No, sir. But as we were talking in the yard and stuff
>    when I was knocking on the door, one of the
>    investigators told me that he had saw some lithium
>    strips in the yard and batteries which leads me to
>    believe that it was a one pot meth lab because they
>    were using those lithium strips.

(*Id.* at 13-14.)

In his R&R, Magistrate Judge Carter found that it was not necessary for Sheriff Myers to explain what happened to the second man because Defendant only offered conjecture as to the incredulity of Sheriff Myer's testimony that they followed tracks in the dew to Defendant's home. (R&R at 7.) Magistrate Judge Carter concluded that Sheriff Myers and Deputy Cox were credible witnesses and accepted their testimony that while conducting an investigation into a suspected arson, they followed tracks through dew which led to Defendant's home. (*Id.* at 7-8.) Magistrate Judge Carter further concluded that Sheriff Myers did not tear open the bag which contained the plastic bottle with tubing and used coffee filters that he recognized as being used in the manufacture of methamphetamine. (*Id.* at 9.) Magistrate Judge Carter found that Sheriff Myers was credible as to this point and specifically noted that "[i]t is not Sheriff Myers' responsibility to explain how the bag came to be torn if he testifies credibly that he did not tear it. It is certainly possible that the defendant may have torn it himself to retrieve something he had

thought he no longer needed but then changed his mind." (*Id.* at 9-10.) Magistrate Judge Carter concluded that the evidence in the bag was legally obtained pursuant to the plain view doctrine. (*Id.* at 10.)

As to Defendant's other objections, Magistrate Judge Carter reached the eminently reasonable inference that the items in the bathtub most likely came from the house which occupied the same yard as the bathtub. (R&R at 11.) Magistrate Judge Carter further found that the information in the affidavit was sufficient to establish a fair probability that a crime would be found in Defendant's home and that the affidavit need not provide "iron clad proof" that evidence of a crime would be found. (*Id.*)

The Court has reviewed the transcript of the evidentiary hearing in this case and, failing to discern any need to hear live testimony at a re-hearing, the Court will not disturb the credibility determinations made by Magistrate Judge Carter. As an initial matter, the Court agrees that Sheriff Myers' recounting of the events leading up to the acquisition of the search warrant is credible. During the arson investigation, a neighbor noted that they had seen an individual matching Defendant's description and another male individual run from the burned residence in the direction of Defendant's home. Based on this information, as well as information from the arson victim about an altercation he had with Defendant and information that Defendant was shooting a gun in his yard the previous day, Sheriff Myers testified that Defendant was a suspect they planned to investigate for the arson and they would have gone to his house in any event. As it was, Sheriff Myers and Deputy Cox had the additional benefit of finding tracks made in the dew leading to Defendant's home. Upon arriving at Defendant's residence, Sheriff Myers noticed smoke coming from a garbage bag sitting in a bathtub in Defendant's front yard. Inside the

garbage bag, Sheriff Myers was able to see a plastic bottle with tubing attached and used coffee filters, items which Sheriff Myers knew were used in the manufacture of methamphetamine. Sheriff Myers also smelled hydrochloric gas, an odor associated with the manufacture of methamphetamine, around Defendant's residence.

The Court also agrees with Magistrate Judge Carter's finding that Sheriff Myers' concern about officer safety necessitating entrance into Defendant's home was reasonable and his testimony with respect to this concern was credible. Sheriff Myers testified that the neighbor said there were two individuals – Defendant and another male – running towards Defendant's home, so Sheriff Myers could not be certain that Defendant was alone. Moreover, the arson victim reported that Defendant had been shooting in his yard the day before. Finally, after seeing the items in the garbage bag and after Deputy Cox informed him that there were lithium batteries (another item used in the manufacture of methamphetamine) in a burn pile to the rear of Defendant's home, Sheriff Myers suspected that Defendant's residence might be a "one pot" methamphetamine lab, which could explode at any time.

Although Defendant argues that Sheriff Myers approached Defendant's home with little caution when he was supposedly concerned about another individual at the home, Sheriff Myers' safety concern was not driven solely by the unknown male reported to be with Defendant and was instead driven by reports of Defendant shooting in his yard the day before and the methamphetamine materials indicating that the residence could be a meth lab. The Court is unable to discern any discrepancy in this testimony that would indicate that Sheriff Myers was not a credible witness.

As for Defendant's argument that Sheriff Myers is not a credible witness because

he did not include every piece of information in his affidavit in support the request for a search warrant, the Court finds that the affidavit includes the majority of the information to which Sheriff Myers testified. The absence of information about the garbage bag, the bag smoking and Defendant's black hands and face is not a significant discrepancy such that the Court would disturb Magistrate Judge Carter's credibility determination.

Therefore, the Court agrees with Magistrate Judge Carter's determination that Sheriff Myers was a credible witness and the resulting factual findings and legal conclusions. The Court agrees with Magistrate Judge Carter's finding that Sheriff Myers was permissibly on Defendant's property when he saw the garbage bag smoking in the bathtub and noticed the hydrochloric gas smell. The Court also agrees with Magistrate Judge Carter's determination that Sheriff Myers obtained the methamphetamine paraphernalia in the garbage bag in the bathtub legally pursuant to the plain view doctrine. Finally, the Court agrees that Sheriff Myers made a reasonable inference in concluding that the items in the bathtub in Defendant's front yard were associated with Defendant and his residence and, therefore, Sheriff Myers' affidavit was sufficient to support probable cause to obtain a search warrant for Defendants' residence. Accordingly, the Court **ACCEPTS and ADOPTS** Magistrate Judge Carter's R&R in its entirety.

## IV. CONCLUSION

For the reasons explained above, the Court **ORDERS** that Defendant's Objections [Court Doc. 26] are **OVERRULED**, that Magistrate Judge Carter's R&R [Court Doc. 24] is **ACCEPTED and ADOPTED** in its entirety, and that Defendant's Motion to Suppress [Court Doc. 11] is **DENIED**.

**SO ORDERED** this 7th day of June, 2011.

                                                   */s/Harry S. Mattice, Jr.*
                                                HARRY S. MATTICE, JR.
                                        UNITED STATES DISTRICT JUDGE